GERTRUDE T. TAYLOR *vs.* MAYOR AND ALDERMEN OF
HAVERHILL & others.

Essex.    January 4, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Tax,* Sewer assessments.   *Sewer.   Municipal Corporations.   Haverhill.*

Where an ordinance of a city other than Boston provides that sewer assessments
within the territory of its sewer system "shall be by fixed, uniform rates based
upon the estimated cost of all sewers therein, both according to the frontage of
such estates on any street or way where a public sewer is constructed and ac-
cording to the area of such estates within a fixed depth of one hundred and fifty
feet from such street or way," and establishes such rates, if the mayor and alder-
men of the city make a sewer assessment under this ordinance it is made under
the authority conferred by § 5 of c. 49 of the Revised Laws and not under § 7
of that chapter, and there can be no question as to the portion of the land cov-
ered by the assessment, as it must cover the entire frontage on the street and
extend back one hundred and fifty feet and no more.

R. L. c. 49, § 4, giving a right to revision by a jury to persons aggrieved by a sewer
assessment imposed by the mayor and aldermen of a city or the sewer commis-
sioners, selectmen or road commissioners of a town, applies to an assessment
made by the mayor and aldermen of a city under an ordinance authorized by
the provisions of § 5 of the same chapter, and also applies to an assessment made
by the mayor and aldermen of a city under § 3 of the same chapter for benefits
received from the construction of a sewer running through private lands and not
in any street or way.

The mayor and aldermen of a city under R. L. c. 49, § 1, have power to construct
a sewer running through private lands and not in any street or way and to
make an assessment under § 3 of the same chapter for benefits received from
its construction.

Where the mayor and aldermen of a city make a sewer assessment under R. L.
c. 49, § 3, for benefits received from the construction of a sewer running through
private lands, the owners of which have granted to the city the right to lay the
sewer through their lands, and not running in any street or way, but in the
order making the assessment it is declared to be made under a certain ordinance
of the city relating to assessments for the construction of sewers in streets or
ways, and providing for such assessment according to the frontage of the estates
assessed on such street or way and according to the area of such estates within
a fixed depth of one hundred and fifty feet from such street or way, although
the assessment for the sewer through private lands is not made under the ordi-
nance the reference to the ordinance indicates that a lot thus assessed embraces
the whole front upon the strip conveyed to the city by its owner and extends
back one hundred and fifty feet from that strip.

PETITION, filed in July, 1904, by Gertrude T. Taylor, a
resident and taxpayer in the city of Haverhill, the owner of

certain land with buildings thereon in that city bounded in part by Mill Street, by land of one Jones and by Lake Saltonstall, for a writ of certiorari to quash two sewer assessments as stated in the opinion, one an assessment of $264 for a sewer running through private lands of the petitioner and others, and the other an assessment of $200 for a sewer running through Mill Street.

The following extracts from the Revised Ordinances of the city of Haverhill were annexed to the petition as an exhibit:

" Sect. 5. The City Engineer shall make and prepare all needed plans and specifications for the construction of all sewers built under the provisions of this ordinance and shall prepare plans and profile of such sewers when so built, showing their location and depth in relation to the street lines and grades, which plans and profile shall be filed in the office of the City Clerk; after being so filed shall be deposited and kept in the office of the City Engineer, which shall be deemed a part of the City Clerk's office for the keeping of such plans.

" The City Engineer shall certify to the Board of Mayor and Aldermen for the purpose of assessments, the frontage and area of abutters on the street or way through which the sewer has been constructed, together with the amount certified to him by the Superintendent of Highways as the cost of constructing such sewer.

" Sect. 6. Assessments upon owners of estates within the territory of the sewer system heretofore adopted, shall be by fixed, uniform rates based upon the estimated average cost of all sewers therein, both according to the frontage of such estates on any street or way where a public sewer is constructed and according to the area of such estates within a fixed depth of 150 feet from such street or way.

" Assessments upon owners of estates without the territory of the sewer system heretofore adopted by the City of Haverhill, shall be by the same fixed, uniform rate, and assessed in like manner as the territory within. When such estates abut upon more than one street or way, assessments for frontage shall be made upon the shortest side of such street or way. Such estimated cost of all the sewers in said sewer system is hereby fixed at $2.16 per running foot, the same having been so found and

determined.   The said fixed uniform rates to be assessed upon estates is hereby established at 20 cents upon each foot of frontage on any street or way where a sewer is constructed, and four mills upon each square foot of area within said fixed depth of 150 feet from such street or way, the same having been found and determined to be 35 per centum of the estimated cost of all the sewers in said sewer system.

" Owners of estates or parts of estates not liable to assessment or not in fact assessed, shall pay for the use of common sewers for the disposal of their sewerage from such estates or parts of estate such reasonable sum as the Mayor and Aldermen may determine."

The order of the board of aldermen for the construction of the sewer running through private lands, which was called by the master " the first sewer " although considered last in the opinion, was as follows :

" Ordered :                   " In Board of Aldermen, August 28, 1902.

" That the Superintendent of Highways be and hereby is authorized and directed to construct a sewer, as hereinafter specified, from the end of the present sewer at the junction of Summer and Mill Streets, through Mill Street and through private lands south and west of Lake Saltonstall, to a point in Mill Street, near the culvert leading to the said lake at its westerly end, a total distance of about Three Thousand Eight Hundred (3800) feet.

" And be it further ordered that the exact location of the said sewer, the grade of said sewer, the size, and materials of which the said sewer is to be constructed, the location of manholes, and of inlets for the admission of surface water, and the waste weir near the southerly end of the lake, shall be as indicated in a set of plans, profiles, etc. on file in the office of the City Engineer, dated March, 1902, and numbered 1654.

" And be it further ordered that the owners of the lands through which the said sewer shall be built, and the owners of lands abutting on highways through which said sewer shall be built, shall pay to the City of Haverhill assessments at the rates of twenty cents per foot frontage and four tenths of a cent per square foot of area as set forth in the Revised Ordinances

of the City of Haverhill for all lands abutting upon said sewer which can be drained into said sewer but no assessment to be made upon any lands reserved for public purposes or upon any lands lying between the said sewer and Lake Saltonstall not exceeding fifty (50) feet in depth measured on a line running at right angles with said sewer to said Lake Saltonstall and it is further ordered that the said Superintendent of Highways shall certify to the City Engineer the cost of said sewer and the City Engineer is hereby instructed to hereafter certify to the Board of Mayor and Aldermen, for the purpose of assessments, the frontage and area of all lands abutting on said sewer or on the streets or ways through which said sewer is constructed together with the amount certified to him by the Superintendent of Highways as the cost of constructing said sewer.

" And be it further ordered that the cost of constructing said sewer shall not exceed the sum of ninety-seven hundred dollars, said cost to be charged to the appropriation for sewer construction."

Here followed a revocation of a previous order, and the attestation of the passage of the foregoing order by the board of aldermen and of its approval by the mayor.

The order for the construction of the Mill Street sewer was as follows:

" Ordered:     " In Board of Aldermen, Nov. 20, 1902.

" That the Superintendent of Highways be and hereby is authorized and directed to construct a sewer on Mill Street, from the regulator manhole south of the west end of Lake Saltonstall, southerly to a point near Arlington Square. The said sewer to be of ten inch pipe for a distance of about four hundred and fifty (450) feet; and of eight inch pipe for the remaining distance of about four hundred and fifty (450) feet, the cost of the said sewer not to exceed eight hundred (800) dollars, the same to be charged to the appropriation for sewers."

The orders and schedules of sewer assessment by which the assessments were apportioned to the several landowners began in case of both sewers as follows:

" Ordered : That the property and estates named in the following schedule be and are hereby severally charged and

assessed in the amounts therein named, as a reasonable sum for the use of the common sewer, for the disposal of their sewage, as determined by the mayor and aldermen under the provisions of section 6 of the ordinance relating to sewers."

The case was referred to a master, who in his amended report found that the first or marginal sewer constructed on the shore of Lake Saltonstall was constructed wholly through private lands not abutting on any street or way; and as to the assessment of $200 levied for the construction of the sewer in Mill Street, found that it was levied under § 6 of the ordinances, printed above. He found as a fact, that, upon the facts stated in the respondents' answer, there was no such laches as to bar the remedy sought by the petitioner.

The case came on to be heard before *Sheldon*, J., who reserved it upon the petition, the return of the respondents, the amended report of the master and the exhibits for determination by the full court.

*J. H. Pearl*, for the petitioner.

*E. S. Abbott*, for the respondents.

HAMMOND, J. This is a petition for a writ of certiorari to quash two sewer assessments. One of the sewers runs through a public highway called Mill Street, and the other chiefly through private lands of the petitioner and others, who had granted to the city the right to lay the sewer through their lands. Various objections are urged by the petitioner against the validity of each of these assessments. We shall consider only those which have been argued upon the brief of the petitioner, and shall treat the others as waived.

1. As to the Mill Street sewer: The petitioner contends that the assessment was made under § 7 of c. 49 of the Revised Laws, and not under § 3, and that there is nothing to show over what part of the land that assessment extended. But by an inspection of the proceedings of the assessing board it clearly appears that the assessment was made under the sixth section of the city ordinances, and therefore under the authority conferred by § 5 of c. 49 of the Revised Laws, and not by § 7. And when the proceedings are read in connection with the ordinance there is no doubt as to the precise portion of the petitioner's land covered by the assessment. The lot embraces the whole front-

age on the street and extends back one hundred and fifty feet and no more.

It is suggested by the petitioner that unless an opportunity for a hearing upon an appeal for an abatement is given the assessment would seem to be illegal and void because no hearing was granted to the petitioner. But we think that the provisions of c. 49, § 4, which grant an appeal, are applicable to this assessment.

2. As to the sewer running chiefly through private lands : This sewer was not built in any street or way, and therefore the provisions of the ordinance are not applicable so far as it runs through private lands. But the board had the power to construct the sewer, (R. L. c. 49, § 1,) and to make an assessment for the same under § 3 of the same chapter; and, although the certificate of the engineer seems to have followed the form prescribed by the ordinance in the case of a sewer located wholly in a public street, and although the master finds that " the computations for the assessments were made in accordance with the provisions " of the ordinance, still, in view of the answer of the board it must be assumed that the estate of the petitioner was fairly and equitably assessed upon the basis of benefit received by the construction of the sewer. Such an assessment, even if not authorized by the ordinances or by R. L. c. 49, § 5, was authorized under R. L. c. 49, § 3, and may properly stand as valid under the powers conferred by that section. The petition in this respect shows no good reason for writ of certiorari.

As in the case of the first sewer, so in this, there is a right to be heard on appeal, so that in that way the landowner proceeding in due time can always be heard before the assessment becomes finally fixed. R. L. c. 49, § 4.

We think also that it definitely enough appears upon what part of the estate the assessment is made for this sewer. The lot embraces the whole front upon the strip conveyed to the city by the petitioner, and extends back one hundred and fifty feet from that strip.

We do not see that justice requires that the petition should be granted.

*Petition dismissed.*